2022 IL App (1st) 210155-U

FIFTH DIVISION
APRIL 22, 2022

No. 1-21-0155

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE BOARD OF TRUSTEES OF OAKTON, COMMUNITY COLLEGE DISTRICT #535, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | No. 16 L 6020 |
| v. | ) ) | |
| LEGAT ARCHITECTS, INC., | ) ) | Honorable Michael F. Otto, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court.
Justices Hoffman and Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's judgment granting summary judgment is affirmed.

¶ 2    The plaintiff-appellant, The Board of Trustees of Oakton Community College District #535 (the College), filed a complaint in the circuit court of Cook County against several different defendants, including a single count of breach of contract against the defendant-appellee, Legat Architects, Inc., (Legat).[1] The circuit court granted summary judgment in favor of Legat and

---

[1]None of the other defendants are parties to this appeal.

dismissed the count against Legat with prejudice. The College now appeals. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 3                                        BACKGROUND

¶ 4     On June 17, 2016, the College filed a complaint in the circuit court of Cook County against Legat, as well as three other defendants: Terracon Consultants, Inc., Turner Construction Company, and Design Consulting Engineers. The complaint arose out of a contract by the College with all of the defendants to construct a new 93,000 square foot building, known as the Lee Center, on the College's main campus (the construction project). According to the complaint, during construction of the building, a concrete slab was poured for the floor but it "settled as much as two inches" in some places, in a "manner" that it was "not designed *** to settle." As a consequence, the slab had to be demolished and replaced, resulting in extra costs. The College's complaint sought recovery of those costs from all of the defendants.

¶ 5     The complaint explained that the College had entered into an "Architect Agreement" with Legat, who was hired as the architect for the construction project. According to the complaint, the Architect Agreement provided that Legat "agreed to design and provide certain other construction administration services in connection with" the construction project. The College also entered into a "Construction Management Agreement" (the CM agreement) with Turner Construction Company (Turner), in which Turner "assumed the duties of the 'Contractor' " for the construction project. The CM agreement was based on a form agreement generated by the American Institute of Architects (AIA). The CM agreement expressly incorporated, by reference, the "AIA Document A201-2007 General Conditions of the Contract for Construction," as amended by the parties.

¶ 6     Relevant to this appeal is section 11.3.7 of the General Conditions of the CM agreement, entitled "WAIVERS OF SUBROGATION," which provides:

"*The Owner and Contractor waive all rights against* (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) *the Architect*, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or *other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3 or other property insurance applicable to the Work*, except such rights as they have to proceeds of such insurance held by the Contractor as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written, where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged." (Emphasis added.)

¶ 7    The College's complaint contained four counts, with each count against a different defendant. Count I was a breach of contract claim against Legat. Count I alleged that, *inter alia*, under the Architect Agreement, "Legat and its subconsultants had a contractual duty to perform their professional services consistent with the professional skill and care ordinarily provided by architects and engineers practicing in the same or similar locality under the same or similar

- 3 -

circumstances performing architectural services for community colleges" as well as "with the professional standard of care relative to all applicable federal and state laws." Count I alleged that Legat materially breached the Architect Agreement in multiple ways, which ultimately resulted in the College having to pay to replace the concrete floor slab in the construction project.

¶ 8    On February 18, 2020, Legat filed a motion for summary judgment on count I of the College's complaint, arguing that the College's claims against it were barred. Specifically, the motion for summary judgment asserted that the claims were barred pursuant to the waiver in section 11.3.7 of the CM agreement, which stated that the College waived any rights against Legat for damages caused during the construction project which were covered by the insurance policy.

¶ 9    In opposition to Legat's motion for summary judgment, the College filed a motion for summary determination,[2] which sought to have the trial court determine the waiver issue in its favor. In its motion, the College relied upon section 11.1.2 of the CM agreement, which provides:

> "Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner [the College] or Construction Manager [Turner]. Owner and Construction Manager Acknowledge and agree that the obligations of the Construction Manager are solely for the benefit of the Owner and not intended in any respect to benefit the Architect [Legat], Subcontractors, or any other third parties."

The College averred that, pursuant to section 11.1.2, "Legat is a stranger to the CM agreement, and is not permitted under any legal theory whatsoever to 'premises' [*sic*] its Waiver Defense upon it."

---

[2]Unlike a motion for summary judgment, a motion for summary determination argues that there is no genuine issue of material fact as to one or more, *but less than all*, of the major issues in the case. *Kay v. Frerichs*, 2021 IL App (1st) 192271, ¶ 18.

¶ 10    The College also relied upon section 11.1.3 of the CM agreement, which provides:

> "In case of conflict between this Agreement or any other document incorporated or referenced herein, the most recent approved Change Order shall prevail, followed by the terms of this Agreement, the A201-2007 General Conditions, Owner's request for qualifications or proposal from Construction Manager and the drawings and specifications."

According to the College, section 11.1.3 clarifies that section 11.1.2 trumps section 11.3.7, barring Legat's waiver defense.

¶ 11    Turner filed a brief in support of the College's motion for summary determination. After briefing was completed, the trial court heard arguments on Legat's motion for summary judgment and the College's motion for summary determination.

¶ 12    On September 14, 2020, the trial court issued a written order granting Legat's motion for summary judgment, denying the College's motion for summary determination, and dismissing count I of the College's complaint with prejudice. The written order explained that "[t]he parties' briefs frame two primary issues": (1) whether Legat is a third-party beneficiary to the CM agreement which would allow it to invoke a waiver defense based on the CM agreement; and (2) whether, assuming that Legat is a third-party beneficiary to the CM agreement, whether section 11.3.7 bars the College's claims against Legat in this case.

¶ 13    In analyzing whether Legat is a third-party beneficiary to the CM agreement, the trial court pointed to section 11.3.7. The trial court stated that that section "expressly states that both parties to the CM Agreement 'waive all rights against' Legat. This is a clear and express intended benefit to Legat." The court further noted that, "If Legat were unable to enforce the waiver, the waiver would be of no effect whatsoever."

¶ 14    The trial court also pointed to section 1.1.2 of the CM agreement, stating:

> "[A]lthough [this section states that] the CM Agreement should not be understood to create a contractual relationship between the Architect and the Contractor or the Owner, [it provides that] '*The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties*.' This is an explicit third-party beneficiary provision. Moreover, it clearly relates to the waiver of subrogation provision - it is a settled principle of Illinois law that waivers of subrogation in construction contracts are intended to facilitate timely completion of the project by avoiding time[-]consuming and expensive litigation." (Emphasis in original.)

The trial court also rejected the College's argument that section 11.1.3 of the CM agreement overrides sections 1.1.2 and 11.3.7 because there was "no conflict" between the sections. Therefore, the trial court held that Legat is a third-party beneficiary to the CM agreement.

¶ 15    Having concluded that Legat, as a third-party beneficiary of the CM agreement, may invoke the agreement's provisions as an affirmative defense, the trial court turned to the second issue of whether section 11.3.7 bars the College's claims against Legat. In its analysis, the trial court relied upon *Rosemont v. Lentin Lumber Co.*, 144 Ill. App. 3d 651 (1986), in which this court affirmed the trial court's entry of summary judgment against the property owner in a construction case based on the waiver provision of an AIA form contract, such as the one in this case. The trial court rejected the College's argument that *Rosemont* was inapplicable to this case because no insurance policy has paid yet and the cause of the defect in the concrete slab is still undetermined. The trial court explained:

> "*Rosemont* rejected a facially identical argument based on identical

contractual waiver language, explaining that the waiver provision must be based on the policy contractually specified, not the policy actually purchased. A policy which failed to provide the coverage required under 11.3.1.1 does not negate the application of the subrogation of waiver provision. *Rosemont*, 144 Ill. App. 3d at 664. Here, the CM Agreement required an 'all risk' policy, *i.e.*, coverage for all loss not resulting from misconduct or fraud. *Id.* As [the College] accuses Legat of neither misconduct nor fraud, the waiver bars [the College's] claims against Legat."

¶ 16    The trial court then granted Legat's motion for summary judgment, denied the College's motion for summary determination, and dismissed the claim against Legat with prejudice (count I of the College's complaint).[3]

¶ 17    The College filed a motion to supplement the record or reconsider the September 14, 2020, judgment granting summary judgment in favor of Legat. On November 19, 2020, the trial court denied that motion.

¶ 18    Subsequently, the College requested a Rule 304(a) finding from the trial court. On January 22, 2021, the trial court entered a Rule 304(a) finding, stating: "(1) there is no just reason to delay the appeal of the Court's September 14, 2020[,] opinion and order granting summary judgment to Legat; and (2) there is no just reason to delay the appeal of the Court's November 19, 202[0,] order denying [the College's] motion to supplement or reconsider the September 14, 2020[,] opinion and order." On February 17, 2021, the College filed a notice of appeal, challenging the September 14, 2020, and November 19, 2020, orders.

---

[3]The record indicates that the College's claims against the other defendants remain pending in the trial court.

¶ 19                                          ANALYSIS

¶ 20     As an initial matter, since we have an independent obligation to consider jurisdiction, we note that the College did not provide a clear, sufficient jurisdictional statement pursuant to Illinois Supreme Court Rule 341(h)(4) (eff. Oct. 1, 2020). The jurisdictional statement merely cites Illinois Supreme Court Rule 304 (eff. Mar. 8, 2016) and the September 14, 2020, and November 19, 2020, orders. It does not reference the trial court's January 22, 2021, Rule 304(a) finding. In fact, the College failed to mention that finding *anywhere* in its brief. As a consequence, it was only through a search of the record that the trial court's Rule 304(a) finding was discovered after having been excluded from mention in the College's brief. Proper appellate procedures, which are consistent with our Supreme Court Rules, are requirements, not suggestions, and are in place to provide an efficient process for litigants as well as this court. Notwithstanding the College's failure to comply with proper procedure, we have determined that this court has jurisdiction to consider this appeal.

¶ 21     On appeal, the College is challenging the September 14, 2020, and November 19, 2020, orders, which ultimately granted summary judgment in favor of Legat and dismissed count I of the College's claim against Legat. However, those judgments were not immediately appealable because the claims against the other defendants remained pending. As a result, a Rule 304(a) finding was required in order for those judgments to be appealable. See *Lakeshore Centre Holdings, LLC v. LHC Loan, LLC*, 2019 IL App (1st) 180576, ¶ 12 (where a judgment is entered as to less than all of the parties, the judgment can only be immediately appealed under the provisions of Rule 304). The provisions of Rule 304(a) require the trial court to make "an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a); see also *American Advisors Group v. Williams*, 2022 IL App (1st) 210734, ¶ 10.

¶ 22     Because the trial court entered a Rule 304(a) finding stating that there is no just reason to

delay the appeal of the court's September 14, 2020, order granting summary judgment in favor of Legat and the court's November 19, 2020, order denying the College's motion to supplement or reconsider, those orders became appealable. And the College filed a timely notice of appeal following that Rule 304(a) finding, conferring this court with jurisdiction to hear the matter. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). We note, however, that to the extent that the College argues that the trial court erred in denying its motion for summary determination, we lack jurisdiction to consider that issue, as the trial court's Rule 304(a) finding did not state that there was no just reason to delay the appeal from that specific order. See *Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 543 (2011) (under Rule 304(a), an order is not appealable unless it is accompanied by the trial court's *express* written finding that there was no just reason for delaying appeal).[4]

¶ 23    Turning to the merits of the appeal before us, the College presents the following issue: whether the trial court erred in granting summary judgment in favor of Legat. The College claims that the trial court erred in granting summary judgment on the basis that its claims against Legat are barred by the waiver in section 11.3.7 of the CM agreement. Its argument is two-fold: (1) that Legat was not an intended third-party beneficiary of the CM agreement and so it cannot invoke any waivers in the contract; and (2) that notwithstanding, the waiver in section 11.3.7 does not apply to its claims against Legat because the extent of the insurance payout for the extra costs of the concrete slab has not yet been determined. The College asks us to reverse the trial court's judgment granting summary judgment and remand count I of its complaint to the trial court for further proceedings.

---

[4]We acknowledge, however, that we will be reviewing the College's challenge to the trial court's order granting summary judgment in favor of Legat, and the College's motion for summary determination was based on the same issue as Legat's motion for summary judgment; so ultimately, the merits will still be determined.

¶ 24    Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *Adams*, 211 Ill. 2d at 43. "Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt." *Wells Fargo Bank, N.A. v. Norris*, 2017 IL App (3d) 150764, ¶ 19. We review appeals from summary judgment rulings *de novo*. *Id.*

¶ 25    Summary judgment was granted in this matter on the basis that the College's claims against Legat are barred by the waiver of subrogation in the CM agreement (section 11.3.7). Our analysis first requires us to address the College's argument that Legat cannot invoke section 11.3.7 because Legat is not an intended third-party beneficiary to the CM agreement. "An intended beneficiary is intended by the parties to the contract to directly benefit for the performance of the agreement; under the contract an intended beneficiary has rights and may sue." *Carlson v. Rehabilitation Institute of Chicago*, 2016 IL App (1st) 143853, ¶ 14. Whether someone is a third-party beneficiary depends on the intent of the contracting parties, as evidenced by the contract language. *Martis v. Grinnell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017, 1020 (2009). "Such an intention must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs." *Id.*

¶ 26    Undoubtedly here, Legat is an intended third-party beneficiary of the CM agreement. Indeed, section 11.3.7 *explicitly* identifies Legat:

> "The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the

other, and (2) *the Architect*, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Contractor as fiduciary. \*\*\*" (Emphasis added.)

This is an unequivocal intended benefit to Legat. As the trial court pointed out, there would be no point to the waiver if Legat was unable to enforce it.

¶ 27    Additionally, section 1.1.2 of the CM agreement expressly states: "*The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties*." The only way to interpret that language is as an explicit intention to benefit Legat with rights under the CM agreement.

¶ 28    We reject the College's argument that section 11.1.2 of the CM agreement prohibits Legat from asserting any contractual rights because it states, "Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner [the College] or Construction Manager [Turner]." Notably, Legat is not bringing a cause of action against the College or Turner. Rather, it is raising an affirmative defense based on the CM agreement; and we note that plenty of other sections throughout the CM agreement allow for such an invocation. There is also no conflict between section 11.1.2 and section 1.1.2 or section 11.3.7 such that only section 11.1.2 prevails, contrary to the College's assertion.

¶ 29    Thus, we find that Legat is an intended third-party beneficiary of the CM agreement and is entitled to invoke its provisions as an affirmative defense. We now turn to whether section 11.3.7 bars the College's claims against Legat.

¶ 30    The College argues that waiver of subrogation cannot apply to its claims against Legat because the language in section 11.3.7 of the CM agreement requires a payout by the insurance carrier as a condition precedent to the waiver of subrogation becoming effective. The College further claims that, pursuant to the CM agreement, the trial court "must also make a coverage determination or a finding of fact as to what an 'all-risk' or 'builders' risk' insurance policy covers or should cover and what is appropriately excluded as an industry standard." The College additionally emphasizes that the cause of the defect in the concrete slab remains in dispute.

¶ 31    Our analysis is guided by *Rosemont*, 144 Ill. App. 3d 651, which is factually analogous. In that case, the plaintiff (property owner) filed a lawsuit against the defendants (contractor and subcontractors) when the building's roof collapsed during construction. *Id.* at 656. The trial court granted summary judgment in favor of the defendants on the basis that the plaintiff had waived its claims pursuant to the contractor agreement, which was a standard form agreement provided by the AIA. *Id.* at 656-57. On appeal, this court affirmed, holding that the parties expressly waived all rights against each other for damages covered by the insurance policy. *Id.* at 661. In so ruling, this court stated that the agreement made it "clear that the parties intended to allocate property loss to an insurer and to limit the recourse of the plaintiff, the party acquiring the policy, solely to the insurance proceeds." *Id.*

¶ 32    In *Rosemont*, this court also rejected the plaintiff's argument that the trial court's ruling required it to improperly draw inferences concerning the extent of the plaintiff's insurance. *Id.* at 664. Because the contract required an all-risk insurance policy and because recovery under an all-risk policy allows for all fortuitous losses not resulting from misconduct or fraud, the collapse of the roof was "literally within such coverage." *Id.* This court found that, consequently, the trial court did not need to make any assumptions regarding the extent of the insurance policy to determine if the plaintiff waived its claims. *Id.*

¶ 33   Likewise, here, the College clearly waived its claims against Legat as shown by section 11.3.7 of the CM agreement, as that section explicitly provides: "The Owner and Contractor waive all rights against *** the Architect *** for *** causes of loss to the extent covered by property insurance ***." It is irrelevant that the insurance for the concrete slab has not yet been paid out. The CM agreement required an all-risk insurance policy, which covers all losses not resulting from misconduct or fraud (see *id.*), and the College's claims are not based on misconduct or fraud. Such a policy indicates that the College and Turner intended to allocate any losses *to the insurer*. Thus, just as in *Rosemont*, we need not make any conjectures regarding the relevant insurance policy in order to determine that the defect in the concrete slab falls squarely within the insurance coverage. This remains true although the cause of the defect is in dispute, as that has no effect on whether the defect is covered by insurance. See *Intergovernmental Risk Management On Behalf of Village of Bartlett v. O'Donnell, Wicklund, Pigozzi & Peterson Architects, Inc.*, 295 Ill. App. 3d 784, 793 (1998) (it matters not whether the loss was caused by the defendant's negligence so long as the loss was a covered loss that occurred during construction). As a result, section 11.3.7 bars the College's claims against Legat.

¶ 34   Accordingly, there is no genuine issue of fact that the College's claim against Legat is barred by section 11.3.7 of the CM agreement. The trial court therefore properly granted summary judgment in favor of Legat on those grounds, and we affirm the trial court's judgment. See *Duniver v. Clark Material Handling Co.*, 2021 IL App (1st) 200818, ¶ 12 (summary judgment is appropriate if no material fact is in dispute and if reasonable persons could not draw differing inferences from the undisputed material facts).

¶ 35                                  CONCLUSION

¶ 36   For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

1-21-0155

¶ 37    Affirmed.