**SEAWARD YACHT SALES, LTD., Plaintiff,**

v.

**MURRAY CHRIS–CRAFT CRUISERS, INC., Murray Chris–Craft Yachts, Inc., and Uniflite, Inc., Delaware corporations, Defendants.**

**Civ. No. 87–799–FR.**

United States District Court, D. Oregon.

Sept. 20, 1988.

Norman J. Wiener, R. Alan Wight, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for plaintiff.

Douglas G. Houser, Michael R. Seidl, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for defendants.

## OPINION

FRYE, District Judge:

The matter before the court is the motion of defendants Murray Chris–Craft Cruisers, Inc.; Murray Chris–Craft Yachts, Inc.; and Uniflite, Inc. (hereinafter collectively referred to as "Chris–Craft"), for partial summary judgment in this action brought by Seaward Yacht Sales, Ltd. (Seaward).

## UNDISPUTED FACTS

Chris–Craft is a manufacturer of boats, and Seaward is a former dealer of Chris–Craft products. Seaward's retail outlets were located in Portland, Oregon, and Seattle, Washington. The contractual relationship between the parties is governed by written Dealer Agreements which were executed at annual sales conferences in July of each year. The contractual relationship of the parties began in July, 1983, for the Portland store and in July, 1984, for the Seattle store. The parties entered into the last Dealer Agreements on July 19, 1986.

Paragraph One of the Dealer Agreements describes the basic relationship between the parties:

APPOINTMENT OF DEALER: Yachts [Chris–Craft] hereby appoints Dealer [Seaward] ... as its Authorized Dealer for the retail sale of all products manufactured by it, subject to the terms and conditions of this Dealer Agreement.... The appointment herein made is non-exclusive and Yachts specifically reserves the right to appoint other dealers for any Products and to sell the same directly to any person, firms, corporations or entities, including, but not limited to, any government, federal, state, or local, and their various departments, services, and agencies, and all other duly authorized Yachts dealers regardless of location.

Paragraph Two describes Seaward's obligations with regard to inventory and business practices:

INVENTORY REQUIREMENTS & OPERATION OF BUSINESS: Dealer [Seaward] agrees to purchase and carry on hand at its place of business a representative inventory of Products including current boat models that will enable Dealer, in Yachts' opinion, to adequately promote the sale of Products. DEALER AGREES, TO THE SATISFACTION OF YACHTS TO MAINTAIN AN ACCEPTABLE FLOOR PLAN [inventory financ-

ing agreement], TO PROMOTE AGRESSIVELY [sic] THE SALE OF BOATS MANUFACTURED BY YACHTS, TO DEVELOP ENERGETICALLY AND SATISFACTORILY THE POTENTIALITY FOR SUCH SALES, TO ATTAIN AND MAINTAIN A REASONABLE MARKET SHARE IN ITS GEOGRAPHIC AREA, AND TO ENSURE THAT WARRANTY AND OTHER REPAIR AND/OR MAINTENANCE WORK IS PERFORMED IN A COMPETENT, REASONABLE, AND TIMELY MANNER.

Paragraph fifteen provides for at-will termination of the Dealer Agreements and waiver of damages:

TERMINATION: This Dealer Agreement may be terminated by either party, with or without cause, upon not less than thirty (30) days' written notice to the other party, delivered in person or by certified or registered mail. Such termination shall void all orders for Yachts [Chris–Craft] product(s) which may not have been shipped prior to the date or receipt of notice of such termination, but does not release Dealer [Seaward] from the obligation to pay any sum that Dealer may then owe to Yachts. Dealer has no recourse for any injury which it may suffer by reason of the termination of this Agreement by Yachts as herein provided, and waives all direct, indirect, incidental or consequential damages as against Yachts.

Paragraph Twenty contains an integration clause stating that the Dealer Agreement constitutes the entire agreement between the parties.

When the parties entered into the first Dealer Agreement in 1983, Seaward also entered into a "floor plan," or inventory financing agreement, with Borg–Warner Acceptance Corp. (Borg–Warner). The relationship between the parties proceeded uneventfully for two years, with Chris–Craft encouraging and Seaward agreeing to open a second store in Seattle, Washington after the first year.

On August 29, 1985, Seaward advised Chris–Craft that it wanted to cancel certain boat orders which had been placed at the July, 1985, sales conference and to delay production on others.

By letter dated October 1, 1985, Borg–Warner notified Seaward that Seaward was delinquent in its payment for two yachts, and that under the terms of the financing agreement a sum of $185,000 was immediately due and owing.

Several weeks later, Seaward sent another letter to Chris–Craft, acknowledging serious sales problems at Seaward. The letter indicated that Seaward still had a majority of its 1985 inventory on hand, and that Borg–Warner had refused to extend further credit to the Portland store until some if its inventory was sold. In light of these problems, the letter asked Chris–Craft to "put the brakes" on boat orders scheduled for 1986.

By early 1986, a dispute had arisen concerning whether Chris–Craft had adequately reimbursed Seaward for certain warranty repairs, boat show expenses, and advertising expenses. By letter dated February 7, 1986, Seaward made a demand on Chris–Craft for $33,843.74. Following an internal investigation undertaken by Chris–Craft, Chris–Craft advised Seaward that $9,841.41 was due to Seaward at that time. On April 16, 1986, Chris–Craft paid Seaward $7,445.83 for warranty claims owed to the Seattle store, but at the same time demanded payment of $7,038.27 which it claimed was owed to Chris–Craft by the Portland store.[1]

At times in the past Chris–Craft had made payments directly to Borg–Warner for Seaward using funds Chris–Craft owed to Seaward for warranty claims. Seaward withheld payment of interest to Borg–Warner, hoping that Borg–Warner would pressure Chris–Craft to pay the money due for warranty claims directly to Borg–Warner,

---

1. Chris–Craft concedes that material issues of fact exist as to Seaward's warranty claims against Chris–Craft, and does not move for summary judgment on that aspect of Seaward's action. The warranty claims are relevant to this motion to the extent that Seaward argues that Chris–Craft terminated the dealerships in retaliation for Seaward's assertion of those claims.

to reduce Seaward's debt to Borg–Warner. By letter dated February 27, 1986, Borg–Warner advised Seaward that these actions were in breach of the Inventory Security Agreement, which provided that "[Seaward] will not assert against [Borg–Warner] any claim or defense [Seaward] may have against any seller of goods to [Seaward]." *Id.* at 16.

On April 29, 1986, Borg–Warner issued another demand for payment to Seaward, asserting that a total of $46,945.86 was past due for interest on the Portland and Seattle inventory. Seaward continued to refuse payment to Borg–Warner. The situation between Seaward and Borg–Warner deteriorated over the next several months, until Borg–Warner, on August 26, 1986, filed Case No. 86–1108–DA in this court, seeking recovery of $1,259,866.22 loaned to Seaward for inventory and $94,394.69 in past due interest.

On May 4, 1986, the District Marketing Manager for Chris–Craft, Howard Peterson, projected sales for the 1987 model year of $500,000 in the Portland market and over $1,000,000 in the Seattle market. Chris–Craft asserts that Seaward's sales for the first months of the 1987 model year were not up to these projections. Peterson identified Seaward's stores on a list of "West Coast Problems" dated October 10, 1986, stating that Seaward had been sued by its financing company and that Seaward had not ordered enough boats in 1986 to retain its dealership status.

By letter dated November 14, 1986, Chris–Craft issued its notice of termination of the Dealer Agreements to Seaward's Seattle store. The store in Portland was notified of termination of the Dealer Agreements by letter dated December 9, 1986. Chris–Craft maintains that it terminated the Dealer Agreements because of the poor sales performance of Seaward which resulted in Seaward's inability to maintain an adequate financing arrangement as required by the agreements. Seaward asserts that the agreements were terminated in retaliation for its dispute with Chris–Craft over the warranty claims.

Seaward's complaint in this action contains two claims against Chris–Craft, titled "Contract Violations" and "Antitrust Violations." The contract claim includes allegations that Chris–Craft owes it reimbursement for warranty repair, boat shows, and advertising, as well as allegations that Chris–Craft breached the implied covenant of good faith and fair dealing by wrongfully terminating the dealership. Seaward also alleges that Chris–Craft breached the covenant of good faith and fair dealing by refusing to pay the warranty claims, by refusing to make payments directly to Borg–Warner, by encouraging Borg–Warner to sue Seaward, and by following the illegal policy of full line forcing. Under the contract claim, Seaward seeks $40,000 in warranty claims, plus $400,000 in compensatory damages and $500,000 in punitive damages.

Seaward's antitrust claim alleges "tying" or "full-line forcing." That is, that Chris–Craft required Seaward to purchase undesirable models of boats which were difficult to sell, in order to obtain the boats Seaward wanted to sell.

Chris–Craft now moves for summary judgment as to Seaward's claim for breach of the implied duty of good faith and fair dealing, as to the claim for punitive damages, and as to the antitrust claim.

## APPLICABLE STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issues of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 256 (1986). Where the non-moving party has the burden of proof at trial, that party must make a showing sufficient to establish the existence of each element essential to that party's case, since the complete failure of proof concerning an essential ele-

ment necessarily renders all other facts immaterial. *Id.,* 106 S.Ct. at 2553.

## CONTENTIONS OF THE PARTIES

Chris–Craft argues that since the Dealership Agreements were terminable at will by either party, it may be held liable for a breach of the implied duty of good faith and fair dealing only if its actions in terminating the agreements were arbitrary. Chris–Craft argues that there is no evidence that its termination of the Dealer Agreements was arbitrary. Chris–Craft also argues that Seaward's complaint alleges only a contractual theory of breach of the implied covenant, and that punitive damages are not recoverable for such a breach of contract. Chris–Craft argues that Seaward has, in any event, waived any claim to damages that it may have against Chris–Craft. Finally, Chris–Craft argues that Seaward has no evidence to support the elements of a tying or full-line forcing antitrust claim.

Seaward responds that the issue of Chris–Craft's good faith presents an issue of fact triable to a jury, and that punitive damages may be recovered for the tortious breach of an implied duty of good faith and fair dealing. Seaward argues that its purported waiver of any claim for damages is in violation of the Oregon Constitution. Finally, Seaward argues that it has established triable issues of fact with respect to its antitrust claim.

In support of its contentions, Seaward does not rely solely on the Dealer Agreements, but also asserts that Chris–Craft made additional, apparently oral, promises that Seaward would be retained as a Chris–Craft dealer for a substantial number of years, so that Seaward could recoup its expenses to develop the market. Chris–Craft relies solely on the written Dealer Agreements, which contain an integration clause.

## DISCUSSION

A. Breach of Contract Claim.

1. *Implied Covenant of Good Faith and Fair Dealing.*

▮ Under Oregon law there is an obligation of good faith in the performance and enforcement of every contract. *Best v. U.S. National Bank,* 303 Or. 557, 561, 739 P.2d 554 (1987). Plaintiffs may recover for the breach of this obligation just as they can for the breach of any other contractual obligation. *Id.* Oregon has also recognized a separate cause of action for tortious breach of the duty of good faith and fair dealing, in limited circumstances where there is a fiduciary or trust relationship. *Amos v. Union Oil Co. of California,* 663 F.Supp. 1027, 1029 (D.Or.1987); *Harper v. Interstate Brewery Co.,* 168 Or. 26, 44, 120 P.2d 757 (1942).

▮ As a preliminary matter, Chris–Craft argues that Seaward has pleaded only a contract claim for breach of the implied covenant, not a tort claim. Seaward counters that it did plead tortious breach of the duty of good faith. It is necessary to distinguish between the two theories, because 1) under the contract theory only contractual damages are available, and 2) the tort theory contains the additional element of a special relationship between the parties.

Seaward's Amended Complaint does not clearly indicate whether it is based on a contract or in tort. The First Claim is headed "Contract Violations" and includes both the warranty claims and the claims based on bad faith. Seaward does ask for punitive damages, but does not plead any special relationship, such as a fiduciary or trust relationship. Seaward now argues that it has brought forward evidence of a fiduciary relationship, based on Seaward's reliance on Chris–Craft's alleged promises to give Seaward time to develop a market and recoup its expenses, and Chris–Craft's alleged encouragement to open a dealership in Seattle.

▮ This court finds that such reliance and encouragement in the context of a business contract do not by themselves create a special relationship sufficient to bring Seaward within the tort theory of bad faith. The allegations in Seaward's complaint are not sufficient to state a claim for

tortious breach of the duty of good faith. Accordingly, this court will treat Seaward's claim as one for contractual breach of the implied covenant of good faith and fair dealing. Punitive damages are not available for breach of contract. *Farris v. U.S. Fidelity & Guaranty Co.*, 284 Or. 453, 466–67, 587 P.2d 1015 (1978). The portion of Chris–Craft's summary judgment motion relating to the claim for punitive damages is granted.

The Oregon Supreme Court recently described the law applicable to a claim of breach of the implied covenant of good faith and fair dealing in *Best, supra,* 303 Or. 557, 739 P.2d 554 (1987). In that case, the plaintiffs were a class composed of certain depositors of defendant bank. Plaintiffs alleged that the bank had breached the implied duty of good faith and fair dealing by setting fees for processing non-sufficient fund (NSF) checks greatly in excess of the bank's costs to process such checks. "The purpose of the good faith doctrine[,]" said the court, 303 Or. at 562, 739 P.2d 554, "is to prohibit improper behavior in the performance and enforcement of contracts." The court noted that "good faith" eludes precise definition because the doctrine must be applied in many different contexts. "This court also has not attempted to set forth a comprehensive definition of good faith. But in line with the Restatement [ (Second) of Contracts] and traditional principles of contract law, the court has sought through the good faith doctrine to effectuate the reasonable contractual expectations of the parties." 303 Or. at 563, 739 P.2d 554.

■ Application of the good faith doctrine, then, requires an assessment of the parties' reasonable contractual expectations. The *Best* court found that the plaintiffs had produced sufficient evidence that the NSF fees were in violation of the parties' reasonable contractual expectations to create a genuine issue of material fact precluding summary judgment. 303 Or. at 565–66, 739 P.2d 554. The trial court's award of summary judgment was therefore reversed, and the case remanded for trial.

Chris–Craft urges this court to grant summary judgment in its favor and against Seaward, arguing that Seaward could have no reasonable contractual expectation that its dealership would be continued if it experienced poor sales and failed to maintain a financing arrangement. Chris–Craft argues that as a matter of law the implied covenant of good faith and fair dealing is not breached where a contract terminable at will by either party is terminated for a specific reason and not arbitrarily. Chris–Craft has produced evidence indicating that the decision to terminate the dealerships was based on dissatisfaction with Seaward's performance—i.e.—Seaward's low sales and loss of its financing arrangement.

In response, Seaward argues that its low sales and consequent termination from the financing arrangement were engineered by Chris–Craft in retaliation for Seaward's demands for reimbursement on its warranty claims. Seaward points to language in *Best* indicating that termination to deprive a party of the benefits of an at-will contract constitutes bad faith:

[T]he parties to an employment contract generally contemplate that an employer may use its discretion to fire an at-will employee if the employer is dissatisfied with the employee's performance or if the employee's services are no longer required. *The parties do not ordinarily contemplate, however, that the employer may fire the employee in order to deprive the employee of benefits to which the employee would otherwise have become entitled if the employment had continued.* An employer who does the latter breaches its obligation to perform in good faith.

303 Or. at 564, 739 P.2d 554 (emphasis added).

The court finds that the only potential issue of fact presented by Seaward is whether Chris–Craft's termination of the dealerships was arbitrary within the terms of *Best*, i.e., based on a pretext but actually done to retaliate against Seaward for its assertion of the warranty claims. The other issues argued by Seaward at length are

all either not material or clearly unsupported by the record.

■ The court finds that there is no reason to treat the relationship between Seaward and Chris–Craft as anything but an at-will agreement. Seaward alleges that Chris–Craft made oral promises that Seaward would be a long term dealer, so that it could recoup its investment. However, Seaward has presented no evidence explaining how it could reasonably have relied on promises conflicting with the express provisions for termination in the integrated dealer agreements, which were signed after the alleged promises.

■ The court also finds that Chris–Craft's alleged refusal to pay Borg–Warner on Seaward's behalf is irrelevant, even if Chris–Craft acted with bad motive. Seaward does not claim that Chris–Craft was obligated to pay Borg–Warner, or that Seaward could not have paid Borg–Warner itself. Rather, uncontradicted evidence indicates that Seaward refused to pay Borg–Warner as an unsuccessful pressure tactic against Chris–Craft.

■ Seaward's other allegations regarding Chris–Craft's relationship with Borg–Warner are not material, even if true. A close relationship between Chris–Craft and Borg–Warner, a requirement to use Borg–Warner for financing, and encouragement by Chris–Craft to foreclose the financing agreement against Seaward would not make Chris–Craft's termination wrongful in the absence of a showing that financing by Borg–Warner was disadvantageous, or that Borg–Warner should have acted differently.

■ In addition, Seaward has produced no evidence indicating any wrongful motive in Chris–Craft's alleged conspiracy with Mr. Geracci to replace Seaward as dealer. In an at-will contract, preference of one dealer over another is a legitimate reason for termination.

■ On the crucial issue of arbitrary termination, Seaward has produced no evidence which may fairly be read as an admission by Chris–Craft that it intended to retaliate against Seaward for any reason, or that it "engineered" Seaward's poor sales performance and loss of financing. The court has reviewed each section of the depositions of Donaldson, Meredith, Confessore and Peterson referenced by Seaward, and when read in context the depositions contain no such admissions.

The only possible evidence of retaliation or bad motive cited by Seaward is testimony of Mr. Todd, the president of Seaward. Mr. Todd stated in his deposition that Chris–Craft had a history of bouncing around to different dealers, loading them up and then changing (p. 104), and that he believes that Chris–Craft instigated Borg–Warner in asserting a default on the financing agreement (p. 201). There is no support for Todd's allegations in the deposition testimony of Chris–Craft's four witnesses.

Such unsupported, conclusory allegations are insufficient to satisfy the requirements of Rule 56(e). *See, e.g., Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985) (conclusory allegations by plaintiff regarding defendant's intent insufficient in Title VII case). The summary judgment rule "would be rendered sterile" if an unsupported allegation as to another person's intent or state of mind could operate to defeat an otherwise valid motion. *Id.*

■ The indirect evidence cited by Seaward is also insufficient to raise a material issue of fact regarding Seaward's claim that Chris–Craft's dissatisfaction was a pretext. One of the reasons for termination given by Chris–Craft was Seaward's loss of its financing arrangement. Seaward does not argue that it did not lose its arrangement with Borg–Warner, and has produced no evidence that it had any other source of financing.

Another reason given by Chris–Craft for termination of the dealership agreements was poor sales performance by Seaward. Seaward produced evidence that it had a large inventory at the time of termination, and that in July of 1986 Chris–Craft renewed the Dealership Agreements (which Seaward interprets as proof that Seaward's

sales performance must have been adequate to that date). This evidence does not support an inference that Seaward's sales were adequate, in light of the other evidence produced by Seaward itself. Seaward did not submit any evidence of its actual sales performance, but admitted that it was having difficulty moving inventory, that its inventory had been around for a long time, that it could not order any new boats until it sold off some of its existing inventory, and that Borg–Warner filed suit against Seaward in August, 1986. In addition, Seaward had cancelled boat orders on more than one occasion, and admitted that "things are not as productive as we anticipated[.]" (Exhibit H to Seidl Decl., letter from Jerry Todd to Chris–Craft, hand-dated 10/30/85.)

The court finds that Seaward has not presented evidence from which a jury reasonably could find that Chris–Craft's dissatisfaction with Seaward was not genuine, or that it was a pretext for some retaliatory or other bad faith motive. Seaward has had ample opportunity to conduct discovery in order to establish its case. Accordingly, the portion of Chris–Craft's summary judgment motion challenging Seaward's claim for breach of the covenant of good faith and fair dealing is granted.

### 2. *Waiver.*

As a separate and additional basis for summary judgment on Seaward's claim for breach of the covenant of good faith, Chris–Craft contends that Seaward has waived its right to sue Chris–Craft for damages caused by termination of the Dealer Agreements. Paragraph Fifteen of each Dealer Agreement provides, in part: "Dealer [Seaward] has no recourse for any injury which it may suffer by reason of the termination of this Agreement by Yachts [Chris–Craft] as herein provided, and waives all direct, indirect, incidental or consequential damages as against Yachts."

Seaward argues that such a clause purporting to waive the right to sue for damages is unconstitutional and void as a matter of public policy under Oregon law, based upon a provision in the Oregon Constitution to the effect that "every man shall have remedy by due course of law for injury done to him in his person, property, or reputation."

There is nothing in the Oregon Constitution that precludes a party from voluntarily waiving its right to sue for damages. *See, e.g., Commerce & Indus. Ins. v. Orth*, 254 Or. 226, 458 P.2d 926, (1969) (upheld waiver of right to seek damages in excess of insurance coverage). Seaward has produced no evidence indicating that it did not freely and voluntarily sign the Dealer Agreements containing the waiver clause. Accordingly, as an alternate basis supporting summary judgment against Seaward's claim for breach of the covenant of good faith, the court finds that Seaward waived its right to seek damages for wrongful termination of the Dealer Agreements.

### B. Antitrust Claim.

Seaward contends that Chris–Craft forced Seaward to purchase undesirable boats in order to obtain more desirable boats, and thereby committed antitrust violations. An illegal tying arrangement is one in which one party agrees to sell a product (the tying product), but only on the condition that the buyer purchases a second product as well (the tied product). *Tic–X–Press, Inc. v. Omni Promotions Co. of Ga.*, 815 F.2d 1407 (11th Cir.1987). The key to the anticompetitive nature of such an arrangement is the seller's ability to force purchase of the tied product because of the seller's dominance over availability of the tying product. *Id.* The elements of a tying claim have been described as follows:

> 1) that there are two separate products, a "tying" product and a "tied" product; 2) that those products are in fact "tied" together—that is, the buyer was forced to buy the tied product to get the tying product; 3) that the seller possesses sufficient economic power in the tying product market to coerce buyer acceptance of the tied product; and 4) involvement of a "not insubstantial" amount of interstate

commerce in the market of the tied product.

*Id.* at 1414. Chris–Craft contends that Seaward can establish none of the first three factors.

 It is unnecessary to address the first two factors, existence of a tied product and coercion, because Seaward has failed to present evidence showing a material issue of fact regarding the third factor, market share. Chris–Craft points to Mr. Todd's deposition testimony admitting that Chris–Craft's share of the cruiser market in the Pacific Northwest during the relevant years was "a very, very small percentage," which he estimated as less than 5 percent. (Todd Deposition at 194.)

Seaward responds that the issue is not whether defendants had a large percentage of sales, but whether they had sufficient power over the tying product, as discussed in *Tic–X–Press, supra,* 815 F.2d at 1420:

> Economic or market power over the tying product can be sufficient even though the seller does not dominate the market or the seller only exercises the power with respect to some of the buyers in the market.... Economic power may be inferred from the tying product's desirability to consumers or from uniqueness in its attributes.

Seaward correctly states the law, but it has produced no evidence showing that Chris–Craft's products were unique or especially desirable to consumers. Mr. Todd stated in his deposition testimony that Seaward dealt with Chris–Craft because Chris–Craft had some product that Uniflite did not offer. (Todd Deposition at 62.) However, Seaward points to no evidence indicating that the desired type of boats were not available from other dealers.

The court finds that Seaward has not established a genuine issue of fact as to Chris–Craft's market share. Where the non-moving party has the burden of proof at trial, that party must make a showing sufficient to establish the existence of each element essential to that party's case. *Celotex,* 106 S.Ct. at 2553. Therefore, the portion of Chris–Craft's summary judgment motion challenging Seaward's antitrust claim is granted.

## CONCLUSION OF THE COURT

There is no genuine issue of material fact as to Seaward's antitrust claim, as to Seaward's contract claim for breach of the implied duty of good faith and fair dealing, or as to Seaward's claim for punitive damages. Chris–Craft's motion for partial summary judgment is granted, leaving the "warranty claims" as the only remaining issue in this action.