Argued June 6, affirmed September 17, 1969

# COMMERCE AND INDUSTRY INSURANCE COMPANY, *Appellant, v.* ORTH ET AL, *Respondents.*

458 P2d 926

*Robert J. Johnston,* Portland, argued the cause and filed a brief for appellant.

*Norman Kobin,* Portland, argued the cause for respondent Orth. With him on the brief were Kobin & Meyer and Robert M. Mercer and Jack L. Joyce, Portland.

*Thomas M. Triplett,* Portland, argued the cause for respondents Schmautz and Muyskens. With him on the brief were James B. O'Hanlon and Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

Before SLOAN, Presiding Justice, and O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

GOODWIN, J.

After paying an apartment owner's claim for a "windstorm loss" sustained while a building was under construction, the insurance company seeks in this action to recover damages against both the general contractor and the roofing subcontractors for alleged

negligence in the installation of the roof. The insurance company appeals from a judgment on the pleadings in favor of the defendants.

The pleadings contain all relevant contract documents. The insurer's complaint does not allege that any document was marred by mistake, imperfection, or ambiguity. The brief on appeal has identified no disputed question of fact that would be material to the correct interpretation of the contract documents. (An issue concerning the alleged negligence of the roofers is made by the pleadings, but the contract documents make that issue immaterial.) On such a record, there was no error in entering judgment on the pleadings. Once all relevant documents were properly before the court, the court properly undertook to construe the contracts. ORS 42.230. The construction of the contracts terminated the litigation.

The owner and the general contractor had entered into a written construction agreement which required the owner to carry insurance to protect the work during construction against loss by fire, windstorm, hail, and other hazards that are ordinarily included in a standard extended-coverage endorsement. The construction agreement also contained the following key paragraph:

> "* * * The Owner, Contractor, and all subcontractors waive all rights, each against the others, for damages caused by fire or other perils covered by insurance provided under the terms of this article, except such rights as they may have to the proceeds of insurance held by the Owner as Trustee."

Construction had begun and the roofing subcontractors had completed the roof before the insurer issued the policy of insurance under which the pres-

ent dispute arose. The policy contained the following clause:

> "Without prejudice to this insurance the insured may, prior to loss, release others from liability for loss to the described property from whatever cause arising * * *."

The apparent purpose of the "waiver" provision of the construction agreement, coupled with the requirement that the owner furnish insurance, was to shift from the owner and the contractor to the insurer the risk of loss from the named perils, including windstorm. The owner's agreement to "waive all rights" against the contractor and subcontractors was intended to benefit the contractor. But because it eliminated the possibility of subrogation, the agreement enhanced the risk of the insurer.

In a clause that the insurer drafted, however, the insurer accepted the above-described risk by expressly allowing the insured owner to release the contractors "from liability for loss to the described premises from whatever cause arising." The insurer thereby agreed to compensate the owner for designated losses for which subrogation would not be available. Presumably the insurer calculated its premiums accordingly.

The parties have agreed in this court that the contract under which the premises were insured did not distinguish between fire losses to which negligence was a contributing factor and fire losses which, like those from lightning fires, were unavoidable. Moreover, the parties agree that the interaction of the insurance and waiver provisions would have precluded subrogation if the building had been damaged during construction by a fire that resulted in part from the negligence of a contractor. We can discover no

valid reason for reaching a different result in the event of an "extended-coverage" loss that resulted from a combination of windstorm and contractor negligence.

The insurer asserts, however, that the waiver provision in the construction agreement is not sufficiently definite to protect a contractor against his own negligence. The insurer cites three cases for the proposition that there is a presumption against an intention to contract for immunity from the consequence of one's own negligence and that a contract will not be so construed unless the intent to contract for such immunity is expressed in unequivocal language. *Waterway Terminals Company v. P. S. Lord*, 242 Or 1, 406 P2d 556, 13 ALR2d 1 (1965); *Ore. Mutual Fire Ins. Co. v. Mathis*, 215 Or 218, 334 P2d 186 (1959); *Glens Falls Indem. Co. v. Reimers*, 176 Or 47, 155 P2d 923 (1945). None of the cited cases supports an extension of the general proposition, correctly stated in those cases, to a case in which the parties have expressly contracted for the kind of insurance protection found in the case at bar.

In *Ore. Mutual Fire Ins. Co. v. Mathis*, supra, the critical clause provided:

"The contractor shall not be responsible for delays or damages due to strikes, fire, accidents or causes beyond his reasonable control * * *." 215 Or at 221.

We held that this clause did not exempt a contractor from a fire loss caused by his own negligence. The clause was obviously intended to protect the contractor from the consequences of circumstances beyond his control, and was never intended to immunize him from liability based on his own fault. 215 Or at 223.

In *Glens Falls Indem. Co. v. Reimers,* supra, the court held that the owner was not protected from the consequences of his own negligence by a contract in which the contractor agreed to compensate the owner for losses caused by the performance of the contract. 176 Or at 53.

■ In *Waterway Terminals Company v. P. S. Lord,* supra, we held that certain provisions did not provide for immunity from negligence. Those provisions were worded to make it clear under what circumstances the contractor would be responsible for his own negligence. 242 Or at 17-19. On the other hand, we held (242 Or at 23) that the following clause did protect a contractor from fire loss caused by his own negligence:

"OWNER TO FURNISH FREE OF CHARGE

"* * * * *

"7. Fire insurance in the amount equal to the value of the equipment as required for the Manufacturer's and Purchaser's protection during the erection of the equipment." 242 Or at 11.

If the phrase quoted from *Waterway Terminals* is sufficiently clear to rebut a presumption that one does not contract for immunity from the consequences of his own negligence, then, *a fortiori,* the applicable waiver and insurance provisions of the contracts in this case are sufficiently clear to accomplish the same result.

■■ In *So. Pac. Co. v. Morrison-Knudsen Co.,* 216 Or 398, 412, 338 P2d 665 (1959), we observed that in searching for the requisite mutual intent to allow a party to contract for immunity from his own negligence the possibility of a harsh or inequitable result

is one of the factors to be considered. Where there is no danger of a harsh result, and where the parties have expressed their intent with reasonable clarity, contractual immunity from a party's own negligence is a matter for negotiation.

■ On the record in this case, it is not harsh to hold that the insurer waived its subrogation rights against the various contractors; we are merely recognizing the bargain made between the insurer and the owner. The owner and the contractor had agreed that the owner would furnish the insurance and would not look to the contractors for recovery for losses covered by insurance. The insurer accepted the situation thus created. An insurance scheme allowing the insurer to bring subrogation actions against contractors would defeat the purpose of the construction contract and would be inconsistent with the terms of the policy.

■ Finally, we may assume that the subcontractors relied on the waiver provision, since it existed before they began performance. Consequently, the lack of privity between the owner and the various subcontractors is irrelevant to any material issue in this case. See *Pac. NW. Bell v. DeLong Corp.*, 246 Or 369, 373-374, 425 P2d 498 (1967).

■ Similarly, so long as the loss occurred during the term of the insurance coverage it is immaterial that the loss occurred after the roofing subcontractors had completed their subcontract. See *Independent School Dist. No. 877 v. Loberg P. & H. Co.*, 266 Minn 426, 123 NW2d 793 (1963).

The purpose of the insurance policy was to protect the owner and the various contractors until the entire project was completed. The waivers of liability were intended to release the contractors from

liability to the owner for insured losses during the entire period of construction.

The total effect of all the contracts was to distribute the risks incidental to construction to an insurance carrier, who agreed in effect to protect all the contracting parties without the right of subrogation against any of them.

Affirmed.