**WILLAMETTE–WESTERN CORPORATION, a corporation, Plaintiff,**

**v.**

**COLUMBIA–PACIFIC TOWING CORPORATION, a corporation, Defendant.**

**Civ. No. 70–285.**

United States District Court,
D. Oregon.

May 12, 1971.

William F. White, of White, Sutherland & Gilbertson, Portland, Or., for plaintiff.

Paul N. Daigle, of Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, Or., for defendant.

## MEMORANDUM OF DECISION

BEEKS, District Judge.

Defendant hired plaintiff to load a barge with logs with plaintiff's crane barge ATLAS, manned by an operator and engineer. Plaintiff was to lift logs from the water and place them on the flat steel deck of the barge. On April 18, 1969, the barge became overloaded; it capsized and damaged ATLAS. I have already found the amount of damages plaintiff sustained and that this damage proximately resulted from defendant's negligence.

The issue now is whether plaintiff is the real party in interest, or, otherwise stated, are the real parties in interest plaintiff's insurers and if so, have such insurers waived their right of subrogation.

The material facts are: At the time of this casualty ATLAS was under demise charter to the Commission of Public Docks for the City of Portland, Oregon. The charter provided that during the period of hire charterer might authorize owner to use, navigate and operate the vessel. On April 18th, 1969, plaintiff was so using and operating ATLAS.

The charter required charterer to carry insurance on ATLAS to completely protect owner from all liability, loss or damage from any party or parties and to provide that the insurance at owner's option shall include owner as an additional assured with full waiver of subro-

gation should owner deem such necessary to fully and effectively protect it against any and all losses, claims, damages and/or demands arising out of the operation of the vessel.

Charterer so insured the vessel.

The law of Oregon, Waterway Terminals Co. v. P. S. Lord Mechanical Contractors, 242 Or. 1, 406 P.2d 556 (1965), and Federal Maritime Law, Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170 (1918), validate the use of a "loan receipt" and recognize that in these situations the insurance company is not pursuing a right of subrogation and is not the real party in interest. Defendant contends that Oregon permits a "piercing" of the loan receipt for the purpose of ascertaining what is said to be the true nature of the transaction. Condor Investment Co. v. Pacific Coca-Cola Bottling Co., 211 F.Supp. 671 (D. Or.1962). See also Commerce & Industry Insurance Company v. Orth, 254 Or. 226, 458 P.2d 926 (1969).

Even if this doctrine is applicable, plaintiff remains the real party in interest.

The waiver of subrogation clause reads:

"It is agreed that no right of subrogation except through General Average shall lie against any carrying vessel or craft belonging in part or in whole to the Assured and/or to a subsidiary and/or affiliated Company of the Assured and/or Charterers and/or Operators and/or Lessees. It is also agreed that no right of subrogation except through General Average shall lie directly or indirectly against the Assured and/or Charterers and/or Operators and/or Lessees and/or any subsidiary and/or affiliated Company."

The clause is both broad and ambiguous. Defendant contends that it is a "Charterer" within the meaning of the clause and that the use of a loan receipt was an indirect payment of the loss within the meaning of the clause. I disagree.

Defendant did not ask plaintiff for the benefit of its insurance or for an underwriter's waiver of subrogation. Defendant did not know of the existence of plaintiff's insurance or the terms of the policy until after loss and this action had been commenced. Defendant had its own policy of liability insurance covering this loss. There is nothing to indicate that plaintiff wanted defendant to get the benefit of its insurance or that it wanted its insurers to waive subrogation, or insulate defendant's insurers from exposure. On the other hand, the charter definitely shows plaintiff's concern and desire to have the vessel insured to fully and effectively protect it against all losses, claims, damages and demands arising out of the operation of the vessel. The broker's form on which the vessel was insured was designed to carry out plaintiff's desires. When read in this context, there is no ambiguity. The first sentence of the clause refers to *in rem* liability and the second sentence to *in personam* liability. The first sentence means that underwriters shall have no right of subrogation against any craft belonging in whole or in part to plaintiff or to a subsidiary or affiliated company of plaintiff or a craft chartered by plaintiff or by a subsidiary or affiliated company of plaintiff. The second sentence means that underwriters shall have no right of subrogation directly or indirectly against plaintiff or against a subsidiary or affiliated company of plaintiff as a charterer, operator or lessee.

Defendant's contention that it was a charterer must be rejected. Defendant argues that because it engaged the services of ATLAS and crew on an hourly basis it became a time charterer. Even so, defendant was not the type of "charterer" contemplated by the clause. See In Re Marine Sulphur Transport Corp., 312 F.Supp. 1081, 1104 (S.D.N.Y.1970).

There is no merit in defendant's contention that plaintiff is not the real party in interest. The clause was intended for plaintiff's sole benefit and defendant is not even an incidental beneficiary.

Plaintiff's counsel may submit supplemental findings of fact, conclusions of law and decree in accordance with this memorandum and the findings of fact heretofore entered. Plaintiff shall recover its costs and interest at the rate of 6% per annum on the items of physical damage from the date plaintiff paid the costs of repair and on the loss of charter hire from the date such hire would have been due.