HOME INSURANCE COMPANY, as Subrogee of Ronald Slovin, *et al.*, Plaintiff-Appellant, v. JONATHAN BAUMAN, d/b/a D.C.C.A. Development, Consulting and Construction Company, Defendant (John Arito Heating and Air Conditioning Company, Defendant-Appellee).

First District (1st Division) No. 1—96—0069

Opinion filed August 11, 1997.

Leahy, Eisenberg & Fraenkel, Ltd., of Chicago (Robert Ostojic, of counsel), for appellant.

Russell W. Hartigan & Associates, of Chicago (Russell W. Hartigan and Patrick H. O'Connor, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Home Insurance Company (Home) appeals from an order of the circuit court of Cook County dismissing its negligence claim against defendant John Arito Heating & Air Conditioning Company (Arito), a subcontractor performing work on property owned by Ronald and Allison Slovin, who were insured by Home. Defendant Jonathan Bauman, d/b/a D.C.C.A. Development, Consulting and Construction Company (Bauman), the general contractor for this work, was previously dismissed from this suit and is not a party to this appeal.

The record on appeal indicates the following facts. On November 4, 1994, Home, as the subrogee of the Slovins, filed a two-count complaint sounding in negligence against both Bauman and Arito. Count I of the complaint was against Bauman; count II was against Arito. The complaint alleged that, prior to September 8, 1992, the Slovins entered into a contract with Bauman for the construction of an addi-

tion to their residence in Lincolnwood, Illinois. Bauman retained Arito for the purpose of installing heating, air conditioning and ventilation systems for the new addition.

Arito allegedly proceeded to install the heating, air conditioning and ventilation systems, including copper tubing lines, which allegedly required their soldering with a propane torch. Home alleged that on September 8, 1992, Arito negligently burned a hole through a temporary natural gas line, resulting in the ignition of the natural gas and attendant fire damage to the Slovins' property. Home sought unspecified damages.

On March 28, 1995, the trial court dismissed the claim against Bauman with prejudice. Home raises no issue regarding count I in this appeal.

On April 10, 1995, Arito filed a motion for summary judgment, based on the May 1, 1992, contract between the Slovins and Bauman (Contract). Article 17 of the Contract provided in part as follows:

"17.3 Unless otherwise provided, the Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall include the interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work and shall insure against the perils of fire and extended coverage and shall include 'all risk' insurance for physical loss or damage including, without duplication of coverage, theft vandalism and malicious mischief.

\* \* \*

17.6 The Owner and Contractor waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Article or any other property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance held by the Owner as trustee. The Contractor shall require similar waivers in favor of the Owner and the Contractor by Subcontractors and Sub-subcontractors."

On June 30, 1995, the trial court heard argument on the motion. On October 25, 1995, the trial court granted summary judgment in favor of Arito, "pursuant to the holding in *Village of Rosemont v. Lentin Lumber Co.*, 144 Ill. App. 3d 651 (1st Dist. 1986)."

Home filed a motion for reconsideration on November 8, 1995. The trial court denied the motion for reconsideration and found that there was no just reason to delay an appeal on December 8, 1995. Home filed a timely notice of appeal to this court.

■ On appeal, Home contends that the trial court erred in granting summary judgment to Arito. Summary judgment is properly granted if the pleadings, depositions, and admissions on file, together

with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Alop v. Edgewood Valley Community Ass'n*, 154 Ill. App. 3d 482, 484, 507 N.E.2d 19, 21 (1987). In this case, the trial court expressly relied on *Village of Rosemont v. Lentin Lumber Co.*, 144 Ill. App. 3d 651, 660, 494 N.E.2d 592, 597 (1986). In *Rosemont*, the insured sought to recover damages against a contractor and two subcontractors connected with the construction of the Rosemont Horizon Arena after a portion of the roof collapsed during construction. *Rosemont*, 144 Ill. App. 3d at 656, 494 N.E.2d at 595. This court affirmed summary judgment in favor of the subcontractors, based on the language of a contract that is similar to the Contract in this case.

Home contends, however, that *Rosemont* is distinguishable from this case. Home notes that the contract in *Rosemont* expressly included subcontractors in its waiver provision:

> "*[T]he Owner and Contractor waive all rights against (1) each other and the Subcontractors *** for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Paragraph *** or any other property insurance applicable to the Work.*" (Emphasis added.) *Rosemont*, 144 Ill. App. 3d at 657, 494 N.E.2d at 595.

Home also cites two cases from other jurisdictions holding that there was no waiver of the right to subrogation. See *Touchet Valley Grain Growers, Inc. v. Opp & Seibold General Construction, Inc.*, 119 Wash. 2d 334, 831 P.2d 724 (1992); *Fortin v. Nebel Heating Corp.*, 12 Mass. App. 1006, 429 N.E.2d 363 (1981).

■ Home argues that summary judgment was improper because the Contract did not contain an *express* waiver regarding subcontractors. A waiver is the intentional relinquishment of a known right, which may be made by express agreement or implied from the conduct of the party alleged to have committed waiver; in the latter situation, the implied waiver must be shown clearly and unequivocally. *E.g., Ryder v. Bank of Hickory Hills*, 146 Ill. 2d 98, 585 N.E.2d 46 (1991).

■ However, unlike this case, the contract language in *Touchet Valley* did not require the general contractor to obtain waivers from the subcontractor. The contract language in *Fortin* is more similar to the language of the Contract in this case, providing that: "Contractor shall require similar waivers by Subcontractors ... in accordance with [section] 5.3.1.5." 12 Mass. App. at 1008, 429 N.E.2d at 365. The *Fortin* court stated that section 5.3.1.5 applied to contracts between the general contractor and the subcontractor and could not "be construed as requiring insertion in the subcontract of waivers between the

owner and the subcontractor." *Fortin*, 12 Mass. App. at 1008, 429 N.E.2d at 365. In this case, section 17.6 of the Contract specifically requires the general contractor to obtain "similar waivers" in favor of the owner from the subcontractors; it does not solely refer to waivers between the general contractor and subcontractors. Thus, *Touchet Valley* and *Fortin* are distinguishable from this case.

Moreover, *Rosemont* does not rely on the cases cited by Home. The *Rosemont* opinion relies on *South Tippecanoe School Building Corp. v. Shambaugh & Son, Inc.*, 182 Ind. App. 350, 395 N.E.2d 320 (1979), which involved an insurer's attempt to recover from a subcontractor. Indeed, *Rosemont* cites *South Tippecanoe School Building* for the proposition that "[a]bsent fraud or design, a builder's risk insurer is not entitled to subrogate against one whose interests are insured." *Rosemont*, 144 Ill. App. 3d at 660, 494 N.E.2d at 597. The *Rosemont* court also stated that the contract language in *South Tippecanoe School Building* was "virtually identical" to the language at issue in *Rosemont*. *Rosemont*, 144 Ill. App. 3d at 660, 494 N.E.2d at 598.

The contract language at issue in *South Tippecanoe School Building* is even *closer* to the language at issue in *this* case than the language in *Rosemont*. *South Tippecanoe School Building*, 182 Ind. App. at 354-55, 395 N.E.2d at 323. The contract in *South Tippecanoe School Building* did not expressly include the subcontractors in its waiver provision. The Indiana court relied not only on the language requiring the execution of waivers by subcontractors, but also language requiring the contractor to indemnify the owner against claims arising out of the subcontractor's negligence, but expressly excluding injury or destruction to the work itself, to conclude that such provisions evinced an intent to place the risk of loss on the work on insurance and to treat the subcontractor as an insured. *South Tippecanoe School Building*, 182 Ind. App. at 360-61, 395 N.E.2d at 326. Section 10.11 of the Contract in this case contains a similar exclusion from indemnification. The Indiana court also relied on language *identical* to section 17.3 of the Contract to conclude that the subcontractor's interests were insured under the owner's policy. *South Tippecanoe School Building*, 182 Ind. App. at 354-55, 360-61, 395 N.E.2d at 323, 326.

In sum, the trial court was correct to follow *Rosemont*, not only because it is the closest Illinois authority, but also because *Rosemont* relies on *South Tippecanoe School Building*, which involved a contract with language even more similar to the Contract at issue here.

Home argues that Arito cannot rely on the Contract because

Arito was not a party to the Contract. However, Home's insureds, the Slovins, *were* parties to the Contract. Section 17.3 of the Contract obligated the Slovins to purchase and maintain insurance on the work that included the interest of the subcontractor. The Contract as a whole demonstrates the intent of the parties to place the risk of loss regarding the work on insurance. The plain language of section 17.3 also clearly demonstrates that the contracting parties intended to confer this benefit directly upon nonparty subcontractors. Thus, Arito falls within the scope of the *Rosemont* opinion. Indeed, given the Contract and facts and circumstances of this case, Arito may well be considered a third-party beneficiary of the Contract. See *XL Disposal Corp. v. John Sexton Contractors Co.*, 168 Ill. 2d 355, 361, 659 N.E.2d 1312, 1316 (1995); *Premier Electric Construction Co. v. American National Bank*, 276 Ill. App. 3d 816, 829, 658 N.E.2d 877, 888 (1995).

Finally, Home contends that the summary judgment is against the public policy that contracts should be enforced as written. However, as the trial court correctly interpreted the contract, the summary judgment does not violate public policy.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and GALLAGHER, JJ., concur.