INTERGOVERNMENTAL RISK MANAGEMENT, on Behalf of the Village of Bartlett, *et al.*, Plaintiffs-Appellants, v. O'DONNELL, WICKLUND, PIGOZZI AND PETERSON ARCHITECTS, INC., Defendant-Appellee (American Mechanical, Inc., *et al.*, Defendants).

First District (3rd Division)    No. 1—96—3159

Opinion filed March 4, 1998.

William J. Sneckenberg & Associates, Ltd., of Chicago (Stuart M. Brody, of counsel), for appellants.

McBride, Baker & Coles, of Oakbrook Terrace (Eric L. Singer, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

This is a subrogation action filed by the plaintiffs, Intergovernmental Risk Management (IRMA), on behalf of the Village of Bartlett (the Village) and the Travelers Insurance Company (Travelers), as subrogee of IRMA and the Village. IRMA, an insurance pool of Illinois municipalities which included the Village of Bartlett, and Travelers, which provided insurance coverage to the Village under the IRMA program, sought to recover monies they had paid the Village for property damage allegedly caused by the defendants' negligent acts. That property damage was sustained as a result of a fire that occurred on January 28, 1994, at the Village's newly constructed police station. That station was constructed as part of the "Village Hall Expansion Project" (the Project), which consisted of contiguous construction of a police station, an addition to and remodeling of the village hall and a connecting link between the police station and the village hall.

Defendant O'Donnell, Wicklund, Pigozzi and Peterson Architects, Inc. (O'Donnell), one of the defendants named in the subrogation action, provided architectural drawings and specifications for the Project. O'Donnell moved to dismiss the complaint against it pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1994)) arguing that the Village had waived its subrogation rights in the contracts for the Project. The trial court granted O'Donnell's motion to dismiss and in the order of dismissal made a finding of appealability. The plaintiffs bring this appeal pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).

The written contracts relevant to a disposition of the instant appeal were the "Owner-Architect Agreement" between the Village and O'Donnell dated August 16, 1989, and the "Owner-Contractor Agreement" between the Village and P.B. Verdico, the general contractor dated May 16, 1991. Paragraph 9.4 of the Owner-Architect Agreement provided in pertinent part as follows:

"The Owner and Architect waive all rights against each other and against the contractors, consultants, agents and employees of the other for damages, but only to the extent covered by property insurance during construction ***."

Paragraph 11.3.1 of the general conditions incorporated into the Owner-Contractor Agreement obligated the Village to purchase and maintain property insurance "in the amount of the initial Contract Sum as well as subsequent modifications thereto for the entire Work at the site." It further provided that the property insurance was to be maintained "until final payment has been made as provided in Paragraph 9.10 or until no person or entity other than the Owner has an insurable interest in the property *** whichever is earlier." Paragraph 9.10, captioned "Final Completion and Final Payment," provided:

"Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and wh ***[1] Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment *** and that the entire balance found to be due the Contractor and noted in said final Certificate is due and payable."

Paragraph 11.3.1.1 of the general conditions to the Owner-Contractor Agreement provided that the property insurance "be on

---

[1]An omission of several letters exists in the copy of this document due to the binding of the record on appeal. A further copy included in the appendix to the brief of the defendant-appellee contained a similar omission.

an all-risk policy form and [that it] insure against the perils of fire and *** physical loss or damage." The Owner-Contractor Agreement also contained a waiver of subrogation provision. It provided in paragraph 11.3.7 of the general conditions as follows:

> "The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants *** for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work ***. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged."

The fire, which occurred on January 28, 1994, in the garage portion of the Village's new police station, caused damage in the amount of $114,412.89. IRMA paid the Village $66,802.74, consisting of $50,000 in property damage (paid as a deductible); $16,118.74 paid in machinery rental; and $683.88 in emergency replacement service costs. Travelers paid the Village $47,610.15. IRMA and Travelers then filed the instant complaint seeking subrogation against the various defendants for their negligence.

In its motion to dismiss, defendant O'Donnell argued that the plaintiffs' claims were barred by the Owner-Architect Agreement and the Owner-Contractor Agreement. Specifically, O'Donnell argued that in accordance with the general conditions incorporated into the Owner-Contractor Agreement, the Village was required to purchase and maintain insurance relating to the Project; that in accordance with the Owner-Architect Agreement, the Village waived all rights against O'Donnell for damages to the extent covered by property insurance during construction; and that since the fire occurred during construction and prior to final payment for the Project the resulting loss was covered by the Village's insurance policy and thus all claims relating to that loss had been waived. Attached to its memorandum in support of the motion to dismiss was the affidavit of Bruce C. Ream, vice president and principal of O'Donnell. In his affidavit, Ream explained the Project and identified the contractual documents relative to the Project. He also averred that the fire on January 28, 1994, occurred at the Project during construction and prior to final payment to the general contractor. He averred that the general contractor submitted to O'Donnell its final application and certificate

for payment on or around October 31, 1994, and that final payment was not made to the general contractor until after April 17, 1995.

In response, the plaintiffs argued that the waiver of subrogation clauses in the Owner-Architect Agreement and Owner-Contractor Agreement did not apply to the insurance policies issued by them to the Village because these policies were not "builder's risk" or construction insurance policies purchased for the Project and thus were not subject to the waiver provisions of paragraph 11.3 of the Owner-Contractor Agreement. The plaintiffs also argued that the waiver of subrogation provisions did not apply because construction of the Village's police garage was completed and the insurable interest had passed to the Village. The plaintiffs further argued that the waiver was in violation of Illinois law and public policy and was prohibited by language in the Travelers policy which was incorporated into IRMA's policy. Attached to the plaintiffs' response and memorandum at law was the affidavit of Timothy T. Van Driska, a subrogation representative at IRMA. Van Driska averred that IRMA was an insurance pool providing risk management and insurance to Illinois municipalities, including the Village of Bartlett. He averred that as a member of IRMA the Village was issued a general liability and property policy in 1983 which has continued in force. Van Driska averred that the IRMA and Travelers policies were not issued as " 'builders risk' " or construction insurance for the Project and did "not contain any specific coverage declaration or endorsement for 'the work on this construction project or the contractors' for the Village of Bartlett village hall expansion project." He further averred that even though the Project was in progress at the time of the fire, construction for the police garage facility was fully complete before the fire. Finally, Van Driska averred that IRMA never waived any of its subrogation rights and was not privy to the contracts between the Village and its contractors.

The trial court granted defendant's motion to dismiss finding that, since the work on the Project was not complete at the time of the fire, the clear language of the waiver provisions of the contracts barred the plaintiffs' action.

On appeal, the plaintiffs argue that the trial court abused its discretion in granting defendant's motion to dismiss because: (1) construction on the police garage facility was complete at the time of the fire and the insurable interest as to that building reverted back to the Village; (2) the waiver of subrogation provisions should not apply where the damage was caused by the negligent and wrongful acts of the defendant; (3) the waiver of subrogation provisions should not apply to their policies since those policies were not issued as "builder's

all-risk" insurance; and (4) the waiver of subrogation provision should not apply because the Travelers insurance policy contained a specific clause maintaining subrogation rights.

■ We begin our analysis of the issues by first noting that the standard of review when an appeal is taken from a motion to dismiss is not abuse of discretion as the plaintiffs contend. A motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1996)) presents only a question of law, and an appeal taken from a motion to dismiss is reviewed *de novo*. *E.g.*, *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 619 N.E.2d 732 (1993). On review, the appellate court must consider whether the existence of a material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal was proper as a matter of law. *Hodge*, 156 Ill. 2d 112, 619 N.E.2d 732.

■ The first issue raised in this appeal is whether, as a matter of law, the fire damaging the police garage facility occurred "during construction." Paragraph 9.4 of the Owner-Architect Agreement provided that the owner and architect waived all rights against each other "but only to the extent covered by property insurance *during construction*." (Emphasis added.) The plaintiffs argue that the word "construction" did not mean construction of the entire Project. They argue that the Village was not required under the construction contracts to maintain property insurance for the police garage facility at the time of the fire because that facility was complete and operational and the insurable interest in that parcel of property had reverted back to the Village. They argue that, as a result, the waiver of subrogation provisions in the contracts were inapplicable.

We disagree. Contracts must be construed as a whole, and it is presumed that all provisions were inserted for a purpose. *Village of Rosemont v. Lentin Lumber Co.*, 144 Ill. App. 3d 651, 494 N.E.2d 592 (1986). Here, while the Project may have consisted of three separate and distinct job segments—construction of the police station, construction of an addition to and remodeling of the existing village hall, and a connecting link between the police station and the village hall—the contracts in question did not distinguish between those segments, isolate them, or in any way treat them as separate and distinct jobs. As set forth above, paragraph 11.3.1 of the general conditions incorporated into the Owner-Contractor Agreement obligated the Village to purchase and maintain property insurance "in the amount of the initial Contract Sum as well as subsequent modifications thereto for the *entire Work* at the site." (Emphasis added.) It further provided that the insurance was to be maintained "until final payment has been made as provided in Paragraph 9.10 or

until no person or entity other than the Owner has an insurable interest in the property required by this paragraph 11.3 to be covered, whichever is earlier." Neither provision suggests an intention by the parties to reduce, on a *pro-rata* basis, the Village's obligation to purchase and maintain property insurance during construction in a manner that corresponds to completion of the various segments of the Project. Neither provision suggests that insurable interests would revert on a partial, *pro-rata* basis as various segments were completed but before completion of the entire Project; and no other provisions have been highlighted by the plaintiffs which would allow for or even suggest such a *pro-rata* obligation by the Village to maintain insurance on the Project. Absent such express agreement, the general rule in construction cases is that both the owner and the contractor have insurable interests in the property until the construction is complete. See *Midwest Lumber Co. v. Dwight E. Nelson Construction Co.*, 188 Neb. 308, 311, 196 N.W.2d 377, 379 (1972); Annotation, *Builder's Risk Insurance Policies*, 94 A.L.R.2d 221, 234 (1964).

Paragraph 11.3.1 can be interpreted in one and only one manner—that the Village's obligation under the construction contracts to maintain property insurance ran with the entire Project and remained in effect until final payment by the Village. This conclusion is further buttressed by the general purpose of waiver of rights provisions, which allow the parties to a construction contract to exculpate each other from personal liability in the event of property loss or damage to the work occurring during construction, relying instead on the insurance purchased by one of the parties to provide recovery for that loss. *Village of Rosemont v. Lentin Lumber Co.*, 144 Ill. App. 3d 651, 494 N.E.2d 592 (1986) (waiver of subrogation clauses shift the risk of loss to the insurance company regardless of which party is at fault). See also *Home Insurance Co. v. Bauman*, 291 Ill. App. 3d 834, 684 N.E.2d 828 (1997); *Ralph Korte Construction Co. v. Springfield Mechanical Co.*, 54 Ill. App. 3d 445, 369 N.E.2d 561 (1977) (upholding waiver provision as a proper agreement between the parties to assume the risk of loss due to fire or other perils as between themselves to the extent each party is covered by insurance); *South Tippecanoe School Building Corp. v. Shambaugh & Son, Inc.*, 182 Ind. App. 350, 395 N.E.2d 320 (1979) (waiver of subrogation provision shifts risk of loss to insurance carrier in return for premium payment). Indeed, as the plaintiffs acknowledge, such provisions allocate risks during construction to facilitate timely completion of the project by avoiding time-consuming and expensive litigation. See *South Tippecanoe*, 182 Ind. App. at 368, 395 N.E.2d at 331; *Haemon-*

*etics Corp. v. Brophy & Phillips Co.*, 23 Mass. App. Ct. 254, 258, 501 N.E.2d 524, 526 (1986). As discussed in a case cited by plaintiffs, *Automobile Insurance Co. v. United H.R.B. General Contractors, Inc.*, 876 S.W.2d 791 (Mo. Ct. App. 1994), that allocation as well as the waiver ceases upon final payment. See *Automobile Insurance Co.*, 876 S.W.2d at 794 (waiver of subrogation applies to completed structure up to time of final payment; once contract has been fully performed, owner's remaining obligation is to make payment and contractor's remaining interest is receipt of final payment).[2]

Here, there is no language in the construction contracts to suggest anything other than that the parties intended to allocate all property loss occurring during construction and prior to completion of the entire Project and payment to insurance and to limit recovery to the proceeds of that insurance. Since the fire in the police garage facility occurred while construction of the Project was continuing and prior to final payment, the Village's obligation to maintain insurance and its agreement to waive subrogation rights as to that facet continued despite completion of a portion of the Project.

The plaintiffs next contend that the trial court erred in granting defendant's motion to dismiss because the waiver of subrogation provisions could not apply to damage caused by the negligent and wrongful acts of the defendant. The plaintiffs contend that the waivers violated public policy by encouraging negligence. They also contend that the waiver of subrogation provisions do not specifically refer to damages arising from negligence and thus do not apply to those types of damages.

Plaintiffs' arguments are incorrect. As discussed above, the purpose of waiver of subrogation provisions is to allow the parties to a construction contract to exculpate each other from personal liability in the event of property loss or damage to the work to the extent each party is covered by insurance. *Village of Rosemont*, 144 Ill. App. 3d 651, 494 N.E.2d 592; *Ralph Korte Construction Co.*, 54 Ill. App. 3d

---

[2]Although *Automobile Insurance Co. v. United H.R.B. General Contractors, Inc.*, 876 S.W.2d 791 (Mo. Ct. App. 1994), stands for the proposition cited in the main text, it is clearly distinguishable from the case at bar and does not support the plaintiffs' position. In that subrogation case, the court reversed the grant of summary judgment in the contractor's favor, finding that the waiver of subrogation clause did not apply to the fire loss that occurred almost 20 months after completion of the project (construction of a new sanctuary and educational facilities for a church) and five months after final payment had been made. In the case at bar, on the other hand, the Project was not completed and final payment had not been made at the time of the fire loss.

445, 369 N.E.2d 561. " '[T]he insurance clause shifts the risk of loss to the insurance company regardless of which party is at fault.' " *Village of Rosemont*, 144 Ill. App. 3d at 660, 494 N.E.2d at 597, quoting *Tuxedo Plumbing & Heating Co., Inc. v. Lie-Nielsen*, 245 Ga. 27, 29, 262 S.E.2d 794, 796 (1980). It avoids the prospect of extended litigation, which would interfere with construction. See *South Tippecanoe*, 182 Ind. App. at 368, 395 N.E.2d at 331; *Haemonetics Corp.*, 23 Mass. App. Ct. at 258, 501 N.E.2d at 526. Thus, it matters not whether the fire loss was caused by defendant O'Donnell's negligence so long as the loss was a covered loss that occurred during construction.

■ We must also reject plaintiffs' argument that the waiver provisions are violative of public policy in that they act, in essence, as indemnity agreements holding the defendant harmless from its own negligence. See, *e.g., Transcontinental Insurance Co. v. National Union Fire Insurance Co.*, 278 Ill. App. 3d 357, 662 N.E.2d 500 (1996) (subcontractor's agreement to indemnify general contractor for the latter's negligence and to purchase insurance for this obligation was an indemnity agreement void under the Construction Contract Indemnification for Negligence Act (Ill. Rev. Stat. 1989, ch. 29, pars. 61, 63 (now 740 ILCS 35/1, 3 (West 1996)))); *GTE North, Inc. v. Henkels & McCoy, Inc.*, 245 Ill. App. 3d 322, 612 N.E.2d 1375 (1993) (contractor's obligation to indemnify owner for owner's own negligence was void indemnity agreement). Plaintiff's very argument was rejected in *Ralph Korte Construction Co. v. Springfield Mechanical Co.*, 54 Ill. App. 3d 445, 369 N.E.2d 561 (1977). That case reviewed the policy considerations for the legislature's prohibition of indemnity agreements used by the construction industry and the desire to protect construction workers and the public given the indemnified contractor's lessened motivation due to indemnification. As the *Korte* court found, those considerations were not affected by waiver of rights provisions which "[do] not involve injury suffered by a construction worker or a member of the general public but instead, damage suffered by one of the contracting parties due to the alleged negligence of another." *Korte*, 54 Ill. App. 3d at 447, 369 N.E.2d at 562. With respect to waiver of rights agreements, the court stated:

> "Both sides benefit from the arrangement and such benefit under the circumstances does not come at the expense of a third party. The agreement, as here applied, does not remove or reduce any incentives to protect workers and others from injury since it does not involve any question of liability to a third party. Under the agreement, Korte waived his right to sue Springfield for Springfield's negligence which resulted in a loss to Korte, because Korte had insurance covering the loss and, in fact, such loss was fully

paid for by Korte's insurer. Under these circumstances, Springfield's avoidance of the burden of liability did not effect any prejudice to the interest in the safety of workers and members of the general public." *Korte*, 54 Ill. App. 3d at 447, 369 N.E.2d at 562-63.

For similar reasons, we find that the waiver agreements here at issue were not violative of the public policy considerations that outlawed indemnity agreements. The property insurance provisions and waiver provisions in the construction agreements here at bar limited the parties' recovery only to property loss sustained by the parties to the agreement and only to the extent that it was covered by insurance. See *Village of Rosemont*, 144 Ill. App. 3d at 661, 494 N.E.2d at 598; *Korte*, 54 Ill. App. 3d at 448, 369 N.E.2d at 563, citing *614 Third Avenue Corp. v. Grand Iron Works, Inc.*, 44 A.D.2d 531, 353 N.Y.S.2d 458 (1974). Moreover, even if the agreement extended to third-party liability, arguably, it would not constitute an agreement to indemnify a party for its negligence but, rather, it would be an agreement to procure insurance on that party's behalf. As recognized in *Capua v. W.E. O'Neil Construction Co.*, 67 Ill. 2d 255, 367 N.E.2d 669 (1977), section 3 of the Construction Contract Indemnification for Negligence Act (740 ILCS 35/3 (West 1996)) preserves enforceability of such agreements to procure insurance. *Capua* stated:

"[Section 3] protects the interests of construction workers and members of the general public who may suffer injury through improper construction or maintenance by preserving supplemental sources of compensation for injured persons, namely insurance and indemnifying and hold-harmless agreements in construction bonds." 67 Ill. 2d at 260, 367 N.E.2d at 671.

See also *Zettel v. Paschen Contractors, Inc.*, 100 Ill. App. 3d 614, 617-18, 427 N.E.2d 189, 191-92 (1981), stating:

"An agreement to obtain insurance is not an agreement of insurance; a person promising to obtain insurance does not by that promise become an insurer although he may assume the liabilities of one if he breaches the agreement. [Citations.] *** Under an indemnity agreement, the promisor agrees to assume all responsibility and liability for any injuries or damages. Under an agreement to obtain insurance the promisor merely agrees to procure the insurance and pay the premium on it. Once the insurance is obtained, the promisor bears no responsibility in the event of injury or damage, even if the insurer should breach the insurance agreement through no fault of the promisor."

Accord *Duffy v. Poulos Brothers Construction Co.*, 225 Ill. App. 3d 38, 587 N.E.2d 1038 (1991); *Jokich v. Union Oil Co.*, 214 Ill. App. 3d 906, 574 N.E.2d 214 (1991).

■ The plaintiffs next contend that the waiver of rights provisions do not apply to damages arising from negligence because the Village was not required to obtain property insurance covering that type of damage. In support of this argument, the plaintiffs cite to two provisions in the Owner-Contractor Agreement, paragraphs 11.3.7 and 11.3.1.1 of the general conditions. Paragraph 11.3.7 states that the owner and contractor waive all rights "for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work." Section 11.3.1.1 provides that the property insurance shall

> "insure against the perils of fire and extended coverage and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, falsework, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's services and expenses required as a result of such insured loss. Coverage for other perils shall not be required unless otherwise provided in the Contract Documents."

The plaintiffs argue that paragraph 11.3.1.1 does not specifically require insurance coverage for damages arising from negligence and that, thus, damages resulting from negligence would fall under "other perils" not required to be insured against. They therefore contend that, since paragraph 11.3.7 provides for waiver of damages to the extent covered by property insurance obtained pursuant to paragraph 11.3, and since paragraph 11.3.1 does not require insurance for damages relating to negligence, then the waiver does not apply to those damages. See *Viacom International, Inc. v. Midtown Realty Co.*, 193 A.D.2d 45, 602 N.Y.S.2d 326 (1993) (a waiver of subrogation clause cannot be enforced beyond the scope specified; waiver applied to tort liability, not contract claims).

We disagree. Paragraph 11.3.1.1 identifies the types of perils that could cause property damage and loss. It identifies fire as a distinct peril. It does not differentiate between the manner in which that peril arises, that is, whether by acts of God or by the intentional or unintentional, negligent or reckless acts of human beings. In point of fact, fire loss could result from any of these acts, although as noted in one case it "nearly always [is] caused by negligence" (*Board of Education v. Hales*, 566 P.2d 1246, 1247 (Utah 1977)). To the extent that this provision does purport to enumerate different types of human conduct that could cause losses of property, it does so with respect to nonfire-related physical loss or damage; and, even there, it purports

only to be inclusive, not preclusive. Moreover, strong argument can be made that even with respect to those property losses the focus is not upon the differing human motivations behind the conduct causing the damage but upon the different types of hazards resulting from categories of human conduct conventionally treated as separate underwriting coverages.

The express language of the contract shows that it required the Village to obtain property insurance that insured against damage to property caused by fire regardless of the fire's origin or cause. Thus, coverage for fire caused by negligent conduct clearly was required, and the waiver of rights provisions extended to the fire loss that occurred in the instant case.

■ Next, the plaintiffs argue that the waiver of subrogation provisions should not apply to their policies because those policies were not "builder's all-risk" policies purchased specifically for the Project. In support of this argument, the plaintiffs cite to paragraph 11.3.1 of the general conditions incorporated into the Owner-Contractor Agreement, which obligated the Village "to purchase and maintain *** property insurance in the amount of the initial Contract Sum as well as subsequent modifications thereto for the entire Work at the site." They cite to paragraph 11.3.1.1 of that agreement, which provided that the "[p]roperty insurance shall be on an all-risk policy form and shall insure against the perils of fire and extended coverage and physical loss or damage." Finally, they cite to paragraph 11.3.7, the waiver of subrogation provision, which stated that the owner and contractor waived all rights against each other and the architect "for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work." In reliance on these provisions, the plaintiffs argue that their policies were not "applicable to the Work" because they were "policies issued to cover for the general liability, vehicles, property and personnel insured by the Village."

We disagree with plaintiffs' interpretation of the phrase "or other property insurance applicable to the Work." The plaintiffs argue that their policies did not meet that criterion because they were not construction insurance policies and because they were not obtained specially for the Project, having been issued in 1983 more than 10 years before the Project commenced. First we note that were one to accept the plaintiffs' interpretation, it would render the phrase "or other property insurance applicable to the Work" redundant as to the immediately preceding phrase "property insurance obtained pursuant to this Paragraph 11.3." That latter phrase, "property insurance obtained pursuant to this Paragraph 11.3," allows for the purchase of

construction insurance or a "builder's risk" policy obtained solely for the Project. Plaintiffs' suggestion that "or other insurance applicable to the Work" also requires the purchase of construction insurance specifically for "the Work" would not allow for any alternative form of insurance implied by the word "or."

More convincingly, however, courts in other jurisdictions have interpreted similar provisions in owner/contractor agreements to find that all-risk policies, obtained prior to execution of the construction contracts, were "other property insurance applicable to the Work" subject to waiver of subrogation provisions in the agreements. In *Lloyd's Underwriters v. Craig & Rush, Inc.*, 26 Cal. App. 4th 1194, 1197, 32 Cal. Rptr. 2d 144, 146 (1994), for example, the construction contract required the owner to "purchase and maintain[ ] property insurance in the amount of the initial Contract Sum *** for the entire Work at the site." The construction contract further provided that the owner and contractor waived "all rights against each other *** for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 17.3 or other property insurance applicable to the Work." *Lloyd's Underwriters*, 26 Cal. App. 4th at 1197, 32 Cal. Rptr. 2d at 146. In that case, the owner, who had coverage under an existing all-risk property insurance policy, did not purchase a separate builder's risk policy. The court held that the waiver of subrogation provision applied to prevent the insurer under the all-risk policy from recovering against the contractor. See also *E.C. Long, Inc. v. Brennan's of Atlanta, Inc.*, 148 Ga. App. 796, 252 S.E.2d 642 (1979); *Haemonetics Corp. v. Brophy & Phillips Co.*, 23 Mass. App. Ct. 254, 501 N.E.2d 524 (1986); *Chadwick v. CSI, Ltd.*, 137 N.H. 515, 629 A.2d 820 (1993) (owner's existing all-risk policy is "other property insurance applicable to the Work").

The plaintiffs attempt to distinguish these cases by arguing that the insurance and risk management policies provided by IRMA and Travelers were not all-risk policies[3] but, instead, general liability policies.[4] We disagree. The issue is not whether the policies are called "all-risk" or "general liability" policies but whether those policies

---

[3]"All risk" insurance policies insure against all fortuitous losses, unless specifically excluded, not resulting from the wilful misconduct or fraud of the insured. *Board of Education of Maine Township High School District 207 v. International Insurance Co.*, 292 Ill. App. 3d 14, 684 N.E.2d 978 (1997). See generally 5 J. Appleman & J. Appleman, Insurance Law & Practice § 3093 (1970); 13A Couch on Insurance 2d § 48:141 (rev. ed. 1982).

[4]The plaintiffs also attempt to distinguish *Chadwick v. CSI, Ltd.*, 137 N.H. 515, 629 A.2d 820 (1993), because in that case the insured raised the limits on its preexisting property insurance policy. We do not believe that

cover the risks and losses delineated in the construction agreements between the Village and the architect and contractor. The Travelers policy that was attached to plaintiffs' memorandum in support of their response to defendant's motion to dismiss shows that, regardless of its classification, that policy qualified as "other property insurance applicable to the Work." That policy insured "against risks of direct physical loss to covered property commencing during the policy period." Covered property included buildings, structures and personal property. Covered buildings and structures were those buildings or structures "(1) owned by the Insured; (2) in which the Insured had an insurable interest; or (3) in which the Insured has agreed in writing before loss to insure." That policy also provided that it covered "the interest of the Insured in buildings, structures and personal property at newly constructed, acquired or leased locations or any Builders Risk within the territorial limits of this policy, which have been previously undeclared." These provisions show that the policy covered contractors' (or builders') risks associated with construction of Village buildings. It covered property that the Village agreed in writing to insure before loss, regardless of the Village's insurable interest in that property. That policy provided "other property insurance applicable to the Work" even though it was purchased many years prior to construction of the Project and even though it did not reference the Project.[5]

We also disagree with plaintiffs' insistence that the IRMA and

---

distinguishing fact is load bearing. In *Chadwick*, the preexisting property insurance, without the raised limits, would not have qualified as other property insurance applicable to the construction work given its lower limits. Moreover, in the other cases cited in the main text, preexisting property insurance was applicable to the construction loss and was subject to the waiver of subrogation provision without, apparently, any increase in limits or policy amendments.

[5]While not raised by the parties, it would appear that the Village relied on its preexisting insurance policies issued by the plaintiffs to satisfy its contractual obligation to obtain property insurance for the Project since neither party has averred that the Village notified the Contractor prior to commencement of the work that it did not intend to purchase the required property insurance. See Owner-Contractor Agreement, General Conditions of the Contract for Construction, par. 11.3.1.2 (requiring owner to notify the contractor in writing prior to commencement of the work if owner did not intend to purchase such property insurance so that contractor could effect insurance at the owner's expense).

Travelers policies could not be considered "other property insurance" applicable to the police facility loss because the entire insurable interest in the police garage facility had reverted back to the Village. For the reasons discussed above, the construction contracts did not provide any type of *pro-rata* reversion of interests back to the Village as various segments to the Project were completed. While the Village, as owner of the buildings that were the subject of the Project, had an insurable interest in the buildings at all times, the defendant architects and the contractor also had insurable interests in those buildings, at least during the course of construction. See *Midwest Lumber Co.*, 188 Neb. at 311, 196 N.W.2d at 379; Annotation, *Builder's Risk Insurance Policies*, 94 A.L.R.2d at 234.

■ As their final argument, the plaintiffs contend that the waiver of subrogation provision was unenforceable because it conflicted with and prejudiced plaintiffs' rights of subrogation reserved in their insurance policies. In support of this argument, the plaintiffs quote the following language from the Travelers policy:

> "This insurance shall not be invalidated should the Insured waive by specific written agreement prior to a loss any or all right of recovery against any party for loss insured against by this policy."

Plaintiffs' reliance on this clause is wholly unwarranted. The thrust of the quoted paragraph is not that waiver of subrogation is invalid but that waiver of subrogation would not invalidate the policy. The clause does not protect the insurer's right of subrogation; rather, it protects the insured's right to recover under the policy even if the insured waived its right to recover against a third party. The clause specifically allows the insured to waive the insurer's right of subrogation.

In *Commerce & Industry Insurance Co. v. Orth*, 254 Or. 226, 458 P.2d 926 (1969), a similar clause in an insurance policy was interpreted to show that the insurer expressly allowed the insured owner of the property to release various contractors from liability for loss to the owner's building under construction. In *Orth*, the owner and the general contractor had entered into a written construction agreement, similar to the one in the instant case, which required the owner to carry insurance to protect the work during construction. The construction agreement also contained a waiver of rights provision, which stated: "The Owner, Contractor, and all subcontractors waive all rights, each against the others, for damages caused by fire or other perils covered by insurance provided under the terms of this article ***." *Orth*, 254 Or. at 228, 458 P.2d at 927-28. The insurance policy provided: "Without prejudice to this insurance the insured may, prior to loss, release others from liability for loss to the described

property from whatever cause arising \*\*\*." *Orth*, 254 Or. at 229, 458 P.2d at 928.

The *Orth* court affirmed the grant of judgment on the pleadings to the contractors and against the insurer/subrogee, stating:

> "On the record in this case, it is not harsh to hold that the insurer waived its subrogation rights against the various contractors; we are merely recognizing the bargain made between the insurer and the owner. The owner and the contractor had agreed that the owner would furnish the insurance and would not look to the contractors for recovery for losses covered by insurance. The insurer accepted the situation thus created. An insurance scheme allowing the insurer to bring subrogation actions against contractors would defeat the purpose of the construction contract and would be inconsistent with the terms of the policy." 254 Or. at 232, 458 P.2d at 929.

Here, as in *Orth*, the Village agreed to furnish property insurance and not look to O'Donnell for recovery for losses covered by that insurance. In addition, as in *Orth*, the insurer expressly allowed the Village to release "any party for loss insured against by this policy" and agreed to compensate the Village for designated losses for which subrogation would not be available.[6] Thus, the waiver of subrogation clauses did not conflict with the insurance policy provision which allowed such waiver by the insured nor were the insurers prejudiced by the construction contracts since the insurers independently waived their rights of subrogation.

Moreover, to maintain that the policy language could override the waiver clauses in the construction agreements would belie the principle that the insurer acquires only those rights possessed by its subrogor/insured and is vulnerable to all defenses that might have been raised to the claim of the subrogor/insured. *Insurance Co. of North America v. Morgan Dyeing & Bleaching Co.*, 262 F.2d 916 (7th

---

[6]The existence of express policy provisions extending coverage to property losses which the insured has agreed in writing to insure and allowing waiver of rights with respect to those losses distinguish this case from several cited by the plaintiffs. In *ICC Industries, Inc. v. GATX Terminals Corp.*, 690 F. Supp. 1282 (S.D.N.Y. 1988), the insurance policy expressly prohibited waiver of the insurer's subrogation rights. In *Aluminum Product Distributors, Inc. v. AAAcon Auto Transportation, Inc.*, 404 F. Supp. 1374 (W.D. Okla. 1975), *aff'd*, 549 F.2d 1381 (10th Cir. 1977), the automobile insurance policy provided that coverage would not inure to the benefit of any carrier or bailee for hire. Since the defendant was a carrier or bailee for hire of the insured's automobile, the insurer was allowed to exercise its subrogation rights, as the automobile owner's subrogee, against the defendant.

Cir. 1959); *Dix Mutual Insurance Co. v. LaFramboise*, 149 Ill. 2d 314, 597 N.E.2d 622 (1992). Here, the insured, the Village, waived any right of recovery against defendant O'Donnell for any property loss caused by O'Donnell during construction of the Project. The plaintiffs, as the Village's subrogees, could only assert the Village's right of recovery against the defendant; and since the Village waived its right of recovery against the defendant, the plaintiffs/subrogees were as vulnerable as the Village to the defendant's assertion of its waiver defense.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LEAVITT, P.J., and COUSINS, J., concur.